[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs seek to foreclose on property mortgaged by the defendants to secure two promissory notes in the total principal amount of $98000. The notes were originally signed by Guy P. Burns and Ashan Haque. Ashan Haque subsequently transferred any interest he had in the mortgaged property to Burns and Haque is not a party in this action. CT Page 6119
Georgette Carlow ("Carlow") subsequently conditionally assigned a portion of her interest in the promissory notes to Gremmo and Sons Sales, Inc., which has a derivatory interest in any award in favor of Carlow.
The parties have stipulated as to the amount of the debt as of April 30, 1998, with one exception. That being whether a payment allegedly made on March 25, 1991, in the amount of $1025 was actually made. The defendant's wife, Jean Burns, testified that the payment in dispute was made. The check was identified as No. 673 and a notation made in the check book register (Def. Exhibit 11). Further corroboration was provided by the testimony of Peter Forgetta, an accountant who kept the business records of the defendant Burns. He regularly reconciled the defendant's check records with the bank statements. If the check had not been sent as shown in the checkbook, the account balance would not have been reconciled with the monthly statement. It is a reasonable inference that the check was sent and cashed.
Accordingly, the balance due on the notes as of April 30, 1998 is $12070.94 which is subject to adjustment depending on whether Burns is entitled to an offset of $26000 in accordance with the agreement of the parties or whether the debt should be adjusted upward pursuant to that agreement.
On March 29, 1990 Burns (and Haque) purchased certain real estate known as 117 Stafford Road, Ellington, Connecticut, from Carlow. A restaurant known as Gigi's was located thereon and prior to March 29, 1990 had been owned and operated by Carlow. Burn's plan was to develop a small strip mall on the property and to have Gigi's as an anchor tenant when that was accomplished.
Because neither Guy Burns nor Jean Burns had any restaurant experience they entered into a management agreement with Carlow, (Defendant's exhibit 3) wherein Carlow would manage the restaurant for a period of one year and she would be paid $500 per week as a draw against anticipated profits. The agreement provided that Carlow would receive as additional compensation "all profits at the end of a year of operation on March 31, 1991 exceeding $26000 up to an additional $15600; all annual profits in excess of $41600 shall be divided 5% to seller (Carlow) and 95% to buyers" (Burns).
It was further agreed that Carlow "guarantees any losses up to $26000 for the calendar year 3/31/90 to 3/31/91 which sum CT Page 6120 shall be offset against the $93000 promissory note."
The agreement also stated that "all [Carlow's] expenses as described herein shall constitute expenses of operating the business of operating Gigi's Restaurant and be so accounted for in addition to other general expenses of the business for operating."
The plaintiff argues that this language limits the expenses of operating the business to those incurred by the plaintiff when computing whether there was a profit or loss. Conversely, she argues, the defendant cannot utilize the cost of maintaining or repairing the premises, taxes, charges for utilities, insurance because these are items Burns expressly agreed to be his responsibility under the terms of a "Commercial Lease" entered into between the parties also on March 29, 1990.
Why such a document was entered into is perplexing. Clearly Carlow was not a tenant but was hired as a manager to operate the business owned by Burns. She alleges such in the second count of her amended complaint. In addition she sold the business to Burns (and Haque) on March 29, 1990 (Defendant's exhibit 3).
The "lease" provides for a rental of $900 per month for twelve months from April 1, 1990. But it also perplexingly states that all rental payments shall be on behalf of [Carlow] by [Burns]. Thus we have the strange phenomenon of the owner of the property paying rent to himself.
In analyzing whether the business made a profit or sustained a loss, the accountant utilized the rental figure of $900 per month as set out by the parties as the fair market rental value of the property. (The plaintiff's position is that, since this is not a cost borne by the plaintiff, it should not be considered.). However, the court concludes the parties probably agreed to this amount as a reasonable rental value in computing loss or profit.
Burns has established by a fair preponderance of the evidence that he is entitled to a setoff of $26000.
The credible testimony of Peter Forgetta establishes the business suffered a loss of $49095 for the one year from April 1, 1990 through March 31, 1991. His testimony was amply corroborated by income tax records for the period in question, and his analyses as shown on defendants' exhibits 9 and 10. CT Page 6121
It is noteworthy also that the tax records for 1988 and 1989, prior to the sale to Burns, the business ran losses, and in those prior years, sales and expenses records were not dissimilar from those for the year in question.
Accordingly, the Court finds the defendant is entitled to an offset in the amount of $26000. against the balance due on the notes as of April 30, 1998. The defendant has been ready, willing and able to pay the amount claimed by him, and found by the Court, to be due and owing.
For these reasons, and since a foreclosure action is equitable in nature, attorney's fees and costs are disallowed.
The parties have suggested that, because of uncertainty as to whom the balance owing on the notes should be paid (there is an IRS lien against Carlow and an assignment of the note to Gremmo and Son Sales, Inc., thus that issues arises) the matter be scheduled as a short calendar matter for the purposes of setting a law day should that be necessary.
Accordingly, the clerk is directed to schedule this matter for short calendar for further order of the Court consistent with this opinion.
Klaczak, J.